This is Huggins v. School District of Manatee County Mr. Huggins, we're going to just wait until the courtroom settles down for just a minute. I think we're good now, sorry. Now you can go ahead, I just wanted to give you the courtesy of having a settled courtroom before you began. May it please the court, Arthur Huggins Jr. on behalf of Appellant Arthur Huggins Sr. This case has been denied based on a motion to dismiss and at the motion to dismiss stage, the pleading is required for plausibility, not probability. There's ample facts to establish that defendant's actions were not motivated solely by decorum concerns. Factually, this is a denial of a right to speak in a limited public forum. Mr. Huggins is a community activist, a staunch advocate for the citizens in this community as well as the students. And this complaint alleges a series of retaliatory actions that on his face might seem not viewpoint discriminant. But if you look at it in a vacuum, you can see there's a series of retaliatory actions that were conducted by the superintendent in this case. Mr. Huggins, I have a couple of questions since we're on a motion to dismiss. These are just based on, we're looking at the amended complaint. I know you are also seeking to amend with a second amended complaint, but I want to focus on the first amended complaint. Yes, Judge. So have you alleged in the first amended complaint that any individual defendant removed the plaintiff from the meeting based on viewpoint of his speech? Yes. Can you point to me in the complaint where you say that he was removed before he could speak based on viewpoint? In each individual account, it discusses the, again, the animus towards Mr. Huggins. Well, I would agree with you that the amended complaint suggests they didn't want him to talk. But is there any paragraph in the complaint you can point me to that says they knew he was going to express this opinion, and so they wanted him out before he did that, or any language similar to that? I haven't found it. And so I was just curious if you could point me to that. Yes, Judge. Can I reserve that for the second when I come back so I can find exactly where that is? Thank you. But you are contending that you have raised an allegation that he was removed before he could express a specific viewpoint. Yes, Judge. He had the intention of speaking on the LMA item that was on the agenda. It's well known that he was advocating for LMA to be returned back to charter status. In this case, there were multiple meetings concerning LMA's status. The community viewed it as a hostile takeover. LMA was a prize jewel in the community, a predominantly minority school that was ran by an African-American individual and was suddenly taken from them and put back into the public school. So Mr. Huggins had attended multiple meetings. He had also spoken to the community. He also did interviews in opposition of what was going on with LMA. Not only that, he came down here to Miami when Ms. Saunders, the superintendent, was being investigated by the Department of Education where they held signs and expressed their opinions in regards to what Ms. Saunders was doing in the district. So it was well known what Mr. Huggins' viewpoint was. Again, this item that was on the agenda was for funding for LMA. And Mr. Huggins was required to sign up and actually list the topic of concern and what he was going to speak on. And that brings me to the point that the written policy for the school board that was in place stated, and I listed it in paragraph 34, it only provided discretion to the chairman to make any removals. And I think that's the crux of the case is that the other side is arguing that Ms. Saunders was within her discretion and her authority to do that. However, if you look at Florida Statute 1001.372, subsection 3, it gives the presiding officer the authority to remove an individual. But it has a requirement, and that requirement is that a warning be issued prior to removal. So you've said this decorum policy, the discretion rests solely with the chair. Are you suggesting, is your claim based on the fact that the chair has unbridled discretion or simply that Ms. Saunders was acting outside of hers? Yes, my allegation is that Ms. Saunders was acting outside of her discretion. She's an executory officer. Okay, so if she doesn't have discretion to enforce the decorum policy, and again, we're on a motion to dismiss, I'm looking at what's in the complaint. If she didn't have the authority, are you saying that the policy caused your client's First Amendment rights to be violated because the board and or the chair ratified her actions, which were outside of her authority? Right, exactly. What I'm saying is that Ms. Saunders, she's an executory officer. In this case, the standards, the guidelines were in place, and the guideline is that, one, we need to issue a warning and that the chairman needs to make that decision. Right, and I'm trying to get at as to how the decorum policy harmed your client. It's that the board or the chair ratified her actions, which were outside of her authority. Right, it contradicted what the guidelines were. Okay, so let me answer the follow-up on that. So I know you posit the legal conclusion that the board and or the chair ratified her actions, which were outside of her authority, but in your complaint, you present a lot of information after your client was removed that the board apologized to your client, said it wouldn't happen again, that the new chair was going to be examining the policy to make sure that that didn't happen again. How do those facts not contradict your legal conclusion that the board, in fact, ratified her actions? Yeah, so based on the facts of the case, Your Honor, Mr. Huggins was standing in a non-disruptive manner at the back of the room. The board never addressed Mr. Huggins. The actions of Ms. Saunders circumvented what was the standard that was in place because she actually told Mr. D'Amico personally to confront Mr. Huggins. So the board had no idea at the time what was going on. Right, and so I guess that brings me to my question, which is you've said the board ratified her actions, but the complaint then suggests that the board did not ratify. How did the board ratify her actions? Because they didn't allow Mr. Huggins to speak based solely on the fact that he was standing in a non-disruptive manner. But you've said the board didn't know that she was going to do this. Well, the board wasn't informed. Right, so how did the board ratify after Mr. Huggins was removed? I think your challenge to the decorum policy hinges on the board's ratification because that's where the power to remove rests, at least in my mind. So I'm just trying to get at how the board ratified her actions. More so it hinges on the conduct, the conduct of the superintendent, which is unbridled discretion. She did not follow the decorum rules that were in place. Instead, she circumvented those rules by having Mr. Huggins removed without the board's provision. The board did not order Mr. Huggins to be removed. Instead, they had a police officer come in and tell Mr. Huggins to leave. Mr. Huggins— That was done at the direction of the superintendent? Yes, that was done. The board members were there at the time? Yes, they were there at the time. And you mentioned before that this policy, the decorum policy, requires some sort of warning. Is that right? Yes, as well as the Florida statute. And your client did not get that warning? No, Your Honor. So is another aspect of your argument that this policy was applied arbitrarily against your client? Yes, Judge, and that's an error that the district court made. There's a class of one doctrine that was alleged in the equal protection. However, the judge continued to make his argument in regards to discrimination, and he said that the plaintiff did not allege a comparator. However, in the complaint, it's clear that he said that he was a class of one and he was treated unfairly, arbitrarily, and that the actions and conduct towards him were not actions that were conducted towards others that were in assembly situated. You just mentioned equal protection. As far as I can tell from your briefing on appeal, you have not raised a challenge to the district court's ruling on either the Fourth Amendment or the equal protection claims, but rather your briefing focuses solely on First Amendment and First Amendment retaliation. Is that correct? No, Your Honor. I did mention the equal protection clause in regards to the court's error, as well as the court's error on applying the subjective test instead of adopting the objective test that proves retaliation. I've cited multiple cases where people have been removed and they have been able to go past the motion to dismiss stage. Some of those cases are actually at summary judgment stage. But nonetheless, those cases are on point with the same facts as far as the removal and the animus and the retaliatory incidents that happened prior to the removal. And in this case, there was an infringement that was orchestrated by Mrs. Saunders and it was carried out by Mr. D'Amico and Officer Woollard. All right. Thank you so much. And, Mr. Huggins, you've reserved five minutes for rebuttal. Thank you, Judge. We took you over by two minutes, so I'm going to break it up and give Ms. Jackson one minute extra and Mr. Salzman one extra minute, so we'll be even on time. May it please the Court. Excuse me. I'm Erin Jackson, and I'm here on behalf of the Eppley's, the School Board of Manatee County, Superintendent Cynthia Saunders, Paul D'Amico, and Mike Barber. We respectfully request that this Court uphold the District Court's order dismissing the claims brought by Mr. Arthur Huggins. The District Court correctly applied the law, and the dismissal should be affirmed. Can I ask you a question about the discretionary function with respect to Ms. Saunders? Yes, Your Honor. So the District Court looked at Florida law to understand what Ms. Saunders' function as superintendent was and what means were within her power to carry it out. Isn't that right? Yes, Your Honor. Okay. So if the District Court got the law on that wrong, that's something we have to consider, right? Yes, Your Honor. Okay. So here is my question for you. When we looked at the Florida law on this, it says it defines the superintendent's duties to include attending school board meetings and presiding at the organization meeting of the school board, which everybody knows this was not the organization of the school board meeting. That's an annual meeting that happens in November in which the school board, quote, shall organize by electing a chair with a superintendent acting as the chair until that organization is complete. But Florida law also defines or provides that the presiding officer of any school, any district school board may order the removal after a warning of any person interfering with the expeditious and orderly process of a board meeting. And so if Ms. Saunders was not the presiding officer here, then it seems like she would not have the authority under Florida law to order the removal of Mr. Huggins. And if that's the case, it seems like she was acting outside of her discretionary duties. So let me just ask you if you would to address that, please. Yes, Your Honor. In the complaint itself, actually, there is an allegation pursuant to Florida law that Ms. Saunders had been delegated the responsibility for the supervision of instruction in the district as the secretary and executive officer of the board. And that cites 1001.32 Florida statute. And that is the authority by which she is acting. She's acting as the secretary and executive officer during the school board meeting she's required to attend. With regard to the – I'm sorry. How does that show us that she's the presiding officer at the school board meeting? Your Honor, I'm not contending that she's the presiding officer. She is acting as – Is that the problem, though? I mean, because the problem that I'm seeing is that the district court determined that she was acting within her duties by looking at the law which says the presiding officer of any district school board may offer the removal after a warning of any person interfering with the expeditious and orderly process of a board meeting. So if she wasn't acting as the presiding officer, what is the basis for her authority to order that Mr. Huggins be removed? In other words, how is it within her discretionary duties? Thank you, Your Honor. Well, according to the complaint itself, what Ms. Saunders said, and this is at paragraph 27, is that she asked the security officer to walk over to Mr. Huggins and tell him to either sit down or leave. And so she, as the superintendent, has the authority and would be appropriate for her to help to ensure that the school board's policies are followed and that decorum is followed during the meeting. And I'm sorry, where is that coming from exactly? Well, Your Honor – Which Florida law source? 1001.32 specifically speaks to her acting as the secretary and executive officer, and that's what I'm referring to. Right, but where does it say that her authority in that capacity allows her to authorize the removal of somebody from a meeting? It does not specifically say that, Your Honor. But what the complaint says is that she advised that he should sit down, either sit down or leave, and he refused to sit down. He did say he couldn't sit down because of his back problems. That is the allegation, yes, Your Honor. So she effectively authorized his removal, right? I mean, that's fair to say. What else can we describe it as? Because, you know, we're on a motion to dismiss. We have to accept the allegations as they're pled in the complaint. And so how else should we construe that? Well, Your Honor, again, because of her position within the school district as the executive officer and the secretary and the requirement that she comply with school board policy and rules, at this time, as alleged in the complaint, there were some additional security measures that were being put – had been put in place for safety and security concerns. And that involved, with respect to the metal detectors, an increased police presence. And in this particular instance, on this night, November 12, 2019, there was a concern because Mr. Huggins stood up and there was concern for safety and security. And so Ms. Saunders, according to the complaint, advised the security officer to go over to Mr. Huggins just to simply ask him to please take a seat or leave. He did not take a seat and, therefore, was asked to leave. Well, let me put it to you this way, just for purposes of the hypothetical. Let's say that there was somebody who was mobility impaired and in a wheelchair, wasn't able to stand. And we're at the Pledge of Allegiance. And the – and Ms. Saunders says, because this person isn't standing, sends Mr. D'Amico over and says, you need to either stand or leave the room, right? Isn't – isn't that problematic? I mean, Your Honor, I think that that would be problematic, but I don't see that as the same as what happened on this instance, especially in light of the fact that this is all based on safety and security and decorum in these meetings. He does say he's at the back of the room. He's not interfering with anybody's line of vision. He told Mr. D'Amico that he has a back problem so he can't sit. And we have to accept his – we have to accept his allegations here as truthful. So how do we, you know, even assuming there are security issues or what have you, how do we take that along with the fact that he's standing in the back, he's explained a medical reason for why he has to do that. According to the allegations, he's not interfering with anyone. He's not disrupting anything. He's not blocking anybody's view. He's just standing there quietly. How do we – how do we take that with – I mean, how does that mesh with your concern about safety? Well, again, Your Honor, I know that we're bound by the four corners of the complaint. And so the plaintiff specifically alleged that there were increased safety measures being put in place in the context of these school board meetings based on the past incidents that had occurred at the meetings. And, Your Honor, the plaintiff also specifically alleges in every count, he incorporates it by reference, that Ms. Saunders at all times material had been delegated the responsibility for the supervision of instruction in the district as a secretary and executive board officer. He also specifically alleges that she was acting under color of law at all times. And so she was – He does. He does. You're right. And that would certainly suggest that she is acting within her discretionary duties. On the other hand, that's a legal conclusion. And so we as the court have to determine whether that is correct as a legal conclusion. And the district court attempted to do that and said it was correct under Florida law. If that's not right and Florida law – and under Florida law she's not acting within her discretionary duties, don't we have to acknowledge that? Yes, Your Honor. I agree that if it's not right, you would have to address it. But I do believe that the court got it right and that she was acting within her discretionary duties in upholding the decorum of the school board meetings and ensuring compliance with school board policy during the meetings. And so when Mr. Huggins stood, there was a concern from a safety perspective. And Mr. D'Amico went over to ask him to either sit or stand. He refused to sit, and so he was asked to leave. And, Your Honor, with regard to what he was going to speak about, because of course part two of this is that there has to be a constitutional violation, and there was no constitutional violation. There is no allegation anywhere in the complaint in terms of what his viewpoint was. He does state that he was going to speak on LMA. I'm sorry, doesn't paragraph 21 say, an agenda item before the board was approval of funds for Lincoln Memorial Academy and Saunders and the board knew plaintiff intended to speak on this matter? Yes, Your Honor, but it doesn't say what viewpoint. There's no allegation of what he was going to say on that matter. And additionally, with regard to the viewpoint and the chilling of speech, Mr. Huggins explains in the complaint that he actually did attend the next meeting, which was only one week later. That's true, and I agree. If that's all we were considering, there wouldn't be a chilled speech issue. But the problem is he wanted to speak at this particular meeting, and he wasn't able to speak at this meeting. So from that standpoint, I think, you know, it's objectively the case that there was a chilling of speech, at least with respect to that particular meeting. And maybe I'm mistaken about that, so I want to give you an opportunity to explain why that would be the case. Well, thank you, Your Honor. He attended the meeting for four hours, and it was not until he stood up and did not follow the directive of the security officer to sit down or leave that he was asked to leave. And so in terms of him being unable to speak, it was not because of his speech. It was not because of his viewpoint. Okay, but we have to agree with that, right? And so for purposes of the hypothetical, let's assume it was because of his speech. Would you agree, then, that he was chilled from speaking at that meeting by being thrown out? If you're asking me if he had been told he was not going to be permitted to speak because of his viewpoint, I'm sorry, I'm not sure that I'm understanding. It's okay. Let's assume that the reason he was thrown out was because of his viewpoint, okay? Because that's what the question has to assume for purposes of determining whether or not he was chilled, right? That he was going to be thrown out, and he was going to be thrown out because of his viewpoint. I mean, that's what it has to assume. So let's assume that he was told that, and then he was thrown out because he didn't sit down. And so would you agree that, as a matter of fact, he was unable to speak at that meeting and therefore chilled from speaking? I mean, as a factual matter, he couldn't speak. That is correct. As a matter of fact, according to the four corners of the complaint, he did not speak at that meeting. I do agree with that.  Thank you. Fair enough. All right. Oh, sorry. Go ahead.  I'm going to explore a little bit of a different angle on that. So Mr. Hogan has mentioned the decorum policy. Is it your contention that the security issues that you've discussed that the superintendent, I guess, gave the superintendent authority to have Mr. Hogan's removed or to ask him to sit down? Is it your contention that those are the same, that it's the same as the decorum policy, or these two different policies that the school board has enacted? Well, Your Honor, I think, again, we would have to look at what the plaintiff is alleging in the complaint in terms of the policy. There were additional measures that were put in place, and that is alleged in paragraph 19 of the complaint. And then, additionally, the school board did have a policy with respect to ensuring decorum. One of the provisions of that policy was that people would sign in to identify that they would like to speak at the meeting. There is no, actually, there's no allegation in the complaint that I could see where it says that he actually had to say exactly what he was going to speak on, although he did allude to that in his argument. Would you agree that, regardless of whether it's the security policy or this decorum policy, that either one would be a prior restraint? I don't agree that it's a prior restraint. I think that, you know, with regard to school board meetings, these are going to be limited forums, and so it is appropriate for there to be some limitations to ensure that the meeting is able to go forward as it should, that the appropriate business is discussed at the meeting, and that there is decorum at the meeting. And so in that context, there were requirements that people just sign in to identify the fact that they would like to speak, and there are security measures in place to ensure safety of those that are present. I don't see that as a prior restraint as long as everyone is following, everyone is subject to the same security measures, and there's no restraint in going through a metal detector or having police presence. I'm sorry. As alleged by Mr. Huggins, they knew that he wanted to speak because of the sign-in requirement, right? And then whether it's the security policy or the decorum policy, the superintendent prevented him from speaking. So in that sense, is it not a prior restraint? Well, Your Honor, again, I think that it's not based on the speech. It's based on the fact that he refused to sit down. And so, yes, he was not allowed to speak because he refused to sit down, and he was asked to leave. But it wasn't a prior restraint on his speech. It wasn't based on his viewpoint. It was not content-based. Let's assume that it's content-neutral. That still has to be applied in a non-arbitrary manner, correct? That is correct. Yes, Your Honor. So construing Mr. Huggins' allegations, I view this as, based on the complaints, saying that these policies were applied arbitrarily to him. These ostensibly content-neutral ones were applied arbitrarily because he wasn't given a warning and he was still removed from the meeting. So how is that not a violation of his rights? He alleges that he was not given a warning, but then he turns around and alleges that he was told he could either sit down or leave. And so it was not strictly a get out of here for standing up, even. It was a you may sit down or leave, and he refused to sit down. So it's your contention that the option to sit down or leave satisfies the warning requirement that would have, from the decorum or security policy? Yes, Your Honor. And I'm sorry, let me ask you one more thing, because you mentioned now a few times that they didn't know what his viewpoints were or it wasn't alleged. We've already talked about how he said what he was going to speak on. But then later in the complaint, it's paragraph 40, Plaintiff is a very active community leader and has consistently participated in board meetings to express his opinion on various community issues. Paragraph 42, Plaintiff supported efforts to have Lincoln Memorial Academy, a black-owned charter school within SDMC's jurisdiction, reinstated after SDMC had taken control of the school. How does that not, especially since we have to give all reasonable inferences, how does that not allege that the board was aware that not only was he going to speak on Lincoln Memorial Academy, but also he was going to speak in favor of it being a charter school? I mean, it seems like we have to assume that. Your Honor, even if that were the case, that that was adequate to put the board on notice of what he was going to speak about, there has still not been a constitutional violation. And that is because the school board has the authority to maintain decorum, and that is a broad authority to maintain decorum so that business can be completed. And in this instance, Mr. Huggins, in the context of the heightened security at the time, stood up, was asked to sit down or leave, refused to sit down, and so was asked to leave. So there's been no constitutional violation, Your Honor. All right. Thank you very much, Ms. Jackson. We'll hear next from Mr. Salzman. Good morning, Your Honors. Good morning. Andrew Salzman on behalf of Officer Woolard. Your Honors, of course we were asking that the court uphold the lower court's finding in this case, but what is important, I think, is to look at the analysis of the order, which was on page 17, regarding Officer Woolard. And the court considered the main issue of qualified immunity, and certainly based on the allegations that were made in this case, their showing was Officer Woolard acted at a direction given to him to go and ask Mr. Huggins to please leave the room. He then took him to the lobby and asked him to leave the lobby. But he was acting under the scope of his employment when he made those actions and decisions and is entitled to qualified immunity. And I think the court's order talking about that is saying, as alleged in the amended complaint, Officer Woolard was providing the security at the November 12th meeting while acting under the color of law as a law enforcement officer. There's no allegations in the complaint that would lead otherwise. I mean, I believe it's reiterated numerous times throughout the amended complaint that Officer Woolard was acting under the direction that he was given and acted accordingly in what he did. The court noted that Florida School Board officials may ask law enforcement authority to remove anyone who's interfering from the meeting. And, yes, as the court has already discussed this issue, was that interference? That is not a decision that was up to Officer Woolard. The decision was made by the superintendent or some other party, and he was acting according to what his direction was given. Ministerially, effectively. I'm sorry, Your Honor? Ministerially, effectively, without discretion. He was acting. He had discretion, obviously, as an officer whether to arrest Mr. Huggins. He didn't choose to do that. Right, but I mean in carrying out the orders of the school officials. Yes, Your Honor. Yes. Although the court found that Officer Woolard was engaged in a discretionary action when he removed the plaintiff from the meeting. Meaning that it was within the scope of his duties. Yes, Your Honor. So the fact that qualified immunity exists, there's really not much argument to be made on the other arguments. But what was interesting in this case, I think, is the plaintiff basically threw Officer Woolard into all these additional counts because of the action that he took. As opposed to any specific actions that are alleged. I mean there was no, he was thrown into the issue as to whether or not there was a First Amendment violation. There's no evidence nor allegations saying that Officer Woolard knew what the content of the plaintiff's speech was going to be. Nor did he act accordingly by doing anything to chill that effect or do anything that would affect his ability to speak. So I feel like the court had talked about some shotgun pleadings and some conclusory statements. And that was what happened to Officer Woolard in this case. That he was basically been thrown into the allegations that were made against the other people involving the school board, the superintendent, and other individuals. And just as an add-on. And that the facts were not sufficient to allege that he had violated any of these causes of action. There's also, Your Honors, if I could discuss the seizure issue. The fact that he asked Mr. Huggins to leave is not seizure. I think the case law is very clear that removal and the right for an individual to be free to leave does not result in a seizure in this case. So I think when the court was doing their analysis on the order involving Officer Woolard, the analysis was really that there were not facts alleged that would support any of these allegations. And in a motion to dismiss, while we look at the four corners, there has to be something more than conclusory statements. And that's what occurred in this case. Thank you, Your Honor. Thank you, Mr. Salzman. All right, Mr. Huggins, you have five minutes for rebuttal. But I took Ms. Jackson over by eight minutes beyond the extra time we had already given her. So if you need more time, we're going to give you up to 13 total. Thank you, Your Honor. Even it out. Just to address Judge Branch's question from earlier, I was able to discern from the complaint multiple paragraphs that include that Ms. Saunders knew exactly what Mr. Huggins was going to speak on. And Judge Rosenbaum did point out paragraph 21 and 22. And then in the individual counts, paragraph for count nine, paragraph 125 and 127, expresses that they knew exactly what he was going to be speaking about, the LMA issues. And count 10, 137 and 139, again, has the same language, that they knew what Mr. Huggins was intending to speak on and that they abridged his freedom of speech, as well as count 11, paragraph 154 and 155. And then I want to touch base on the district court's decision to weigh evidence, and I'll cite you to Moms of Liberty, which is included in my brief, which says that courts can't weigh evidence and make factual calls in the case. Opposing counsel continues to say that Mr. Huggins refused to sit. Mr. Huggins was not given an opportunity to sit. He was confronted, and by him informing Mr. D'Amico that his back was hurting, his next step was to go get Mr. Woollard. Mr. Woollard or Mr. D'Amico did not give him an opportunity to return to his seat. Instead, they argued that it was a consensual encounter. Well, there's case law that says a consensual encounter turns into a detainment when an officer makes a command and a person decides to submit to that demand, submit to authority, and that's what happened in this case. So them using the language that he was free to leave, that doesn't fit the circumstances. This was an encounter that he was confronted with, and he was physically assaulted. The hand was placed on his body. He was directed out. So at that time, he was seized. Now, after that, was he no longer detained when they told him to leave the building? No, but in between the time from them confronting him and giving him a command, and he submitted to that authority by leaving out of the meeting, he was effectually seized. Where in your blue brief do you raise a Fourth Amendment challenge? I didn't raise it in the brief, but I'm addressing the argument that he made about Mr. D'Amico. But it's not one of your issues on appeal, correct? No, it's not. You're responding to him. I'm responding to his argument in regards to what Officer Woullard did. Officer Woullard, yes, he was acting within his discretionary authority. I'm not arguing that. But what I'm arguing is that his activities abridged, his conduct abridged Mr. Huggins' right to speech. He did chill Mr. Huggins' speech by removing him and not allowing him to return back to the meeting. The problem, I think, with respect to Mr. Woullard is there's – maybe I missed it, so you can tell me if I did. I didn't see any allegation that Mr. Woullard knew or had reason to know what it was that Mr. Huggins would be speaking on and what his viewpoint was. Instead, we have a situation where he just happens to be the officer who's there. He's instructed to remove Mr. Huggins. And for the First Amendment claim, for a retaliation claim anyway, we have to know, or there at least has to be an allegation, that Mr. Woullard removed Mr. Huggins in order to prevent him from speaking on what he wanted to speak on or in retaliation for trying to express his views. And that I'm not seeing there with respect to Mr. Woullard. But I may have missed it, so feel free to direct me. So, I mean, in regards to Mr. Woullard, again, he's acting at the direction of Ms. Saunders. And Ms. Saunders has animus towards Mr. Huggins. So him acting in concert, he effectively carried out what Ms. Saunders wanted, which was that Mr. Huggins not be allowed to speak on the LMA issue. There's a case law that says that when an officer is acting in concert with others in an unlawful manner. That's true, but the officer has to know that what he or she is doing is unlawful, right? Right, right. They have to know that. So in order to know that it's unlawful, like, for example, if it's a situation where unlawful force is being used, any officer who's standing there and sees it being used and knows the context will know instantly that unlawful force is being used. And so that's where that is, you know. But in a situation where, you know, let's assume for the purposes of this question that Ms. Saunders wanted to retaliate against Mr. Huggins for his point of view. And so through Mr. D'Amico, he told Mr. Woolard to remove Mr. Huggins. We don't know from that that Mr. Woolard knew that the reason Mr. Huggins was really being removed was because Ms. Saunders didn't like what he was going to say. So that's why we need an allegation that tells us that. And I didn't see one in here, but it's, you know, it's a long complaint. I may have missed it, so if I did, please let me know. I mean, in rebuttal to that, again, there's no restriction here on standing in a non-disruptive manner. The officer, Woolard, he has to know the rules of the quorum. He also has to be familiar with what a consensual encounter is and what it takes to detain a person. In order to give someone a command to leave, he needs more than just Mr. Huggins standing in a non-disruptive manner. So him as an officer, he's in a position to know the laws, and he knows what's required reasonable suspicion to detain someone or to give someone a command and expect them to adhere to what you're asking them to do. So that's the argument in regards to Officer Woolard as an officer acting in his discretionary authority. Again, I'm not arguing that he didn't, but the removal, the act of removing Mr. Huggins was unlawful, and that's something that we have to charge the officer with knowledge of in his position as an officer. Let's see. There's a few other things I wanted to touch on. Again, I want to reiterate that there was no restriction on standing, and there was nothing formally adopted by the school board that said that nobody was allowed to stand. While I did not make specific allegations of incidents where other people were standing, they were allowed, other people were allowed to stand during those meetings. In fact, that same- Of course, we can't really consider that because it's a motion. Right, but that goes to the futility of the complaint, and I do want to touch on that. The court only allowed the plaintiff to make one amendment to the complaint, and that amendment was surrounding shotgun pleadings, and I've drafted many 1983 complaints, and when you're talking about a 1983 complaint, I want to address the color of law. That's the element of a 1983 complaint. You have to allege that they were acting under the color of law. That's not to be confused with what an official has a discretion to do. That's true. And I think they'll continue to conflate those issues, and the judge bought it in the district court, and that's clearly not the law. Not only that, Your Honor, when it comes to 1983, when you allege a 1983 complaint, you have to allege constitutional violation. When you're talking about a Fourth Amendment or a First Amendment violation, you have to allege the 14th as well, and the judge asked me not to include the First Amendment and the 14th Amendment in one count. However, the 14th Amendment has to be alleged because that is what allows a complaint to be brought. Incorporation. Yes. Thank you, Your Honor. So I think that those were issues that the judge took up in the first motion to dismiss Teddy Granite. I attempted to follow the letter of the law as well as what the judge was recommending, but I'm kind of put in a hard place where you're telling me not to include the 14th Amendment in my First Amendment claim when I know what the law is, so I continue to do that. But to address the shotgun pleading, that's what he asked to be addressed first. There was nothing substantive about the first motion to dismiss that was granted. So the second motion to dismiss is when he addressed the substantive issues, and I have not had the ability to amend the complaint to address those substantive issues. So that's also something that I'm asking that you reverse as far as the district court goes. Again, Your Honor, I just want to reiterate that the motion to dismiss stage is plausibility, not probability. I think that the court overstepped their bounds in weighing the factual analysis. I believe that the complaint is sufficient. There's sufficient facts to establish that Mr. Saunders' actions were motivated by animus and not by the quorum concerns. I think I've listed multiple incidents. I think I've alleged that Mr. Huggins was a staunch advocate for LMA. I think that the board was well aware. He had been in many press interviews. He had spoken multiple times. And then the last thing I want to talk about is the chilling effect. Mr. Huggins was chilled. They only point out the fact that he was able to return to attend the meeting, but they don't talk about the fact that he wasn't allowed to speak, and that's the chill. His ability and his right to speak at the meeting. Not only the meeting that he was thrown out of, he didn't speak at that meeting, but the next meeting that he attended, he didn't speak at that meeting. So his intention to speak on LMA was denied, and then he did return by invitation to the next meeting, but he was not allowed to address the board or speak at that meeting as well. So he was, in fact, his freedom of speech was, in fact, chilled. Nothing further. We'll ask that you reverse the lower court decision. All right. Thank you, counsel.